**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | * | |
| ACandS, Inc. | * | Case No:  02-12687 (JKF) |
| | | Adv. No. 10-53721 |
| | * | |
| In re: | | |
| | * | |
| Specialty Products Holding Corporation[1] | | Case No:  10-11780 (JKF) |
| | * | Adv. No. 10-53702 (JKF) |
| In re: | * | |
| Kaiser Aluminum Corporation | * | Case No:  02-10429 (JKF) |
| | | Adv. No. 10-53719 |
| | * | |
| In re: | | |
| | * | |
| Owens Corning | | Case No:  00-03837 (JKF) |
| | * | Adv. No. 10-53720 |
| In re: | * | |
| USG Corporation | * | Case No:  01-02094 (JKF) |
| | | Adv. No. 10-53712 |
| | * | |
| ACandS ASBESTOS SETTLEMENT | | |
| TRUST; KAISER ALUMINUM & | * | |
| CHEMICAL CORPORATION ASBESTOS | | |
| PERSONAL INJURY TRUST; OWENS | * | |
| CORNING/FIBREBOARD ASBESTOS | | |
| PERSONAL INJURY TRUST; and | * | |
| UNITED STATES GYPSUM ASBESTOS | | |
| PERSONAL INJURY SETTLEMENT | * | |
| TRUST (the "**Trusts**"); | | |
| | * | |
| and | | |
| | * | |
| TRUST ADVISORY COMMITTEE FOR | | |
| THE ACANDS ASBESTOS SETTLEMENT | | |
| TRUST; TRUST ADVISORY | | |

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Specialty Products Holding Corp. (0857); and Bondex International, Inc. (4125).  The Debtors' address is 4515 St. Clair Avenue, Cleveland, Ohio 44103.

COMMITTEE FOR THE KAISER
ALUMINUM & CHEMICAL
CORPORATION ASBESTOS PERSONAL
INJURY TRUST; TRUST ADVISORY
COMMITTEE FOR THE OWENS
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and TRUST
ADVISORY COMMITTEE FOR THE
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST (the "**TACs**");

and

HON. DEAN M. TRAFELET (RET.), THE
LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS AGAINST THE
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST (the "**Futures Representative**")

     Plaintiffs

v.

HARTFORD ACCIDENT AND
INDEMNITY CO., FIRST STATE
INSURANCE CO., NEW ENGLAND
INSURANCE COMPANY, NATIONAL
UNION FIRE COMPANY OF
PITTSBURGH, PA, AMERICAN HOME
ASSURANCE CO., GARLOCK SEALING
TECHNOLOGIES, LLC., SPECIALTY
PRODUCTS HOLDING CORP.,
DELAWARE CLAIMS PROCESSING
FACILITY, LLC, and VERUS CLAIMS
SERVICES, LLC

     Defendants

**Hearing Date: 1/10/11 at 9:30 a.m. (EST)**

**Obj. Deadline: 12/14/10 at 4:00 p.m. (EST)**

## SPECIALTY PRODUCTS HOLDING CORP.'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT AND, IN THE ALTERNATIVE, TO DROP SPECIALTY PRODUCTS HOLDING CORP. AS A MISJOINED PARTY

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

I.      PLAINTIFFS' ATTEMPT TO CIRCUMVENT PENDING PROCEEDINGS BY
WAY OF THESE COLLATERAL ADVERSARY PROCEEDINGS VIOLATES
THE FIRST-FILED RULE................................................................................................ 4

II.     PLAINTIFFS' ADVERSARY PROCEEDINGS IMPROPERLY INVOKE THE
DECLARATORY JUDGMENT ACT .............................................................................. 6

III.    THE TACS AND FUTURES REPRESENTATIVE LACK STANDING TO
PARTICIPATE IN THESE ADVERSARY PROCEEDINGS ......................................... 8

IV.    PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF FAILS TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED ............................................... 11

       A.     The Pleading Standard Governing Requests for Injunctive Relief ..................... 11

       B.     Plaintiffs Fail to Assert Facts "Showing" They Plausibly Face Irreparable
Harm from the Debtors' Proposed Discovery Requests...................................... 12

       C.     Plaintiffs Fail to Plead Facts Demonstrating They Lack An Alternative
Adequate Remedy Through Their Opposition to the Rule 2004 Motion ............ 15

V.     IN THE ALTERNATIVE, SPHC SHOULD BE DISMISSED FROM THIS
ACTION AS A MISJOINED PARTY UNDER FEDERAL RULE OF CIVIL
PROCEDURE 21........................................................................................................... 16

CONCLUSION.......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

Adams v. Freedom Forge Corp.,
204 F.3d 475 (3d Cir. 2000) ................................................................................12, 14

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) .................................................................................2, 11, 12

Assoc. for the Pres. of Freedom of Choice, Inc. v. Wadmond,
215 F. Supp. 648 (S.D.N.Y. 1963) ...........................................................................9

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) .............................................................................2, 11, 12, 16

Bethlehem Steel Corp. v. EPA,
669 F.2d 903 (3d Cir. 1982) ...................................................................................13

Brillhart v. Excess Ins. Co. of Am.,
316 U.S. 491 (1942) ..................................................................................................7

Butera, Beausang, Cohen & Brennan, P.C. v. Ryan,
No. 00-2509, 2000 WL 1824171 (E.D. Pa. Dec. 11, 2000) .....................................5

Campbell Soup Co. v. ConAgra, Inc.,
977 F.2d 86 (3d Cir. 1992) .....................................................................................11

Crosley Corp. v. Hazeltine Corp.,
122 F.2d 925 (3d Cir. 1941) .....................................................................................5

DirecTV, Inc. v. Leto,
467 F.3d 842 (3d Cir. 2006) ..............................................................................16, 17

eBay Inc. v. MercExchange, L.L.C.,
547 U.S. 388 (2006) ................................................................................................11

EEOC v. Univ. of Pa.,
850 F.2d 969 (3d Cir. 1988) .....................................................................................5

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) ...................................................................................12

Green v. Warden, U.S. Penitentiary,
699 F.2d 364 (7th Cir. 1983) ....................................................................................4

Grider v. Keystone Health Plan Cent., Inc.,
500 F.3d 322 (3d Cir. 2007) .....................................................................................5

Holiday Inns of Am., Inc. v. B & B Corp.,
 409 F.2d 614 (3d Cir. 1969)................................................................................13

In re Cortellessa,
 No. 05-24258, 2006 WL 1997407 (Bankr. E.D. Pa. June 9, 2006)...........................4

In re RCN Litig.,
 Case No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006)..................................9

Inmates of Attica Corr. Facility v. Rockefeller,
 453 F.2d 12 (2d Cir. 1971)..................................................................................15

Kivalina Relocation Planning Comm. v. Teck Cominco Alaska, Inc.,
 227 F.R.D. 523 (D. Alaska 2004) ..........................................................................9

McLendon v. Cont'l Can Co.,
 908 F.2d 1171 (3d Cir. 1990)..............................................................................13

Ne. Jet Ctr., Ltd. v. LeHigh-Northampton Airport Auth.,
 No. 90-1262, 1996 WL 442784 (E.D. Pa. Aug. 1,1996) ......................................13

New Delview Place Assocs. v. Del. Sav. Bank,
 No. 92-4209, 1992 WL 346281 (E.D. Pa. Nov. 10, 1992) ......................................8

NYLife Distribs., Inc. v. Adherence Grp., Inc.,
 72 F.3d 371 (3d Cir. 1995)....................................................................................7

Oneida Motor Freight, Inc. v. United Jersey Bank,
 848 F.2d 414 (3d Cir. 1988)..................................................................................4

Shields v. Zuccarini,
 254 F.3d 476 (3d Cir. 2001)................................................................................11

State Auto Ins. Co. v. Summy,
 234 F.3d 131 (3d Cir. 2000)..................................................................................7

Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.,
 887 F.2d 1213 (3d Cir. 1989)................................................................................7

United States v. Falcone,
 No. 09-2269, 2010 WL 1372435 (D.N.J. Mar. 16, 2010) ......................................4

Wilton v. Seven Falls Co.,
 515 U.S. 277 (1995)..............................................................................................7

**STATUTES**

10 Del. C. § 3904 ....................................................................................................9

12 Del. C. § 3801 et. seq. (the "Delaware Statutory Trust Act")..................................10

12 Del. C. § 3804 ...................................................................................................10

12 Del. C. § 3806 ...................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 2004 ...................................................... passim

Federal Rule of Bankruptcy Procedure 7009.................................................................9

Federal Rule of Bankruptcy Procedure 7012(b) ...........................................................2

Federal Rule of Bankruptcy Procedure 7017.................................................................9

Federal Rule of Bankruptcy Procedure 7021 ...................................................... passim

Federal Rule of Bankruptcy Procedure 9017.................................................................4

Federal Rule of Civil Procedure 9(a)(2) .......................................................................9

Federal Rule of Civil Procedure 12(b)(1) ...............................................................2, 11

Federal Rule of Civil Procedure 17(b).........................................................................9

Federal Rule of Civil Procedure 21 ...........................................................1, 16, 17, 18

Federal Rule of Evidence 201 .....................................................................................4

RLF1 3630337v. 1

1.      Debtor Specialty Products Holding Corp. ("SPHC"; collectively with Debtor

Bondex International, Inc. ("Bondex"), the "Debtors")[2] moves for an order dismissing the

Original Verified Complaints filed by the above captioned plaintiffs ("Plaintiffs") or, in the

alternative, dropping SPHC as a misjoined party pursuant to Federal Rule of Bankruptcy

Procedure 7021 and Federal Rule of Civil Procedure 21.  As they relate to SPHC, Plaintiffs'

adversary proceedings represent an improper attempt to circumvent and indirectly attack a

pending, properly filed and fully joined motion seeking permission to serve discovery under

Federal Rule of Bankruptcy Procedure 2004 in the Debtors' chapter 11 cases ("Rule 2004

Motion").

## INTRODUCTION AND SUMMARY OF ARGUMENT

2.      Prior to the commencement of this adversary proceeding, SPHC filed with this

Court its Rule 2004 Motion seeking narrow categories of information from certain claims

processing facilities that provide services to the Plaintiffs and other asbestos trusts.  That motion,

which is currently awaiting resolution in the Debtors' chapter 11 cases before this Court, has

been contested by the trusts who are Plaintiffs here on largely the same grounds on which the

relief in these adversary proceedings is sought.  The Rule 2004 Motion has been the subject of a

half-day hearing before the Court at which the Plaintiffs argued against the proposed discovery.

And, pursuant to a directive from the Court, the Rule 2004 Motion will be the subject of a meet-

and-confer session ordered by the Court to be held on December 1, 2010, and it is scheduled for

a status conference on December 13, 2010 and a further hearing, if necessary, on January 10,

2011.  Rather than allow this Court to properly resolve their objections to that Rule 2004 Motion,

Plaintiffs seek by way of the instant actions to collaterally attack that motion.  In so doing, they

---

[2]      For reasons that have not been disclosed, Debtor Bondex International, Inc. is not named as a defendant in these adversary proceedings.

seek to avoid the legitimate processes for disputing discovery requests set forth in the Federal

Rules of Bankruptcy Procedure.  Further, Plaintiffs seek to relitigate issues that have already

been raised and joined by the Rule 2004 Motion and Plaintiffs' objections thereto.

3.     The Court should dismiss Plaintiffs' adversary proceedings as to SPHC for three

reasons:

- Plaintiffs' adversary proceedings aim to derail the discovery process in pending chapter 11 cases through a collateral declaratory judgment action in direct contravention of important principles of intra-federal comity reflected in the first-filed rule.

- Plaintiffs' adversary proceedings constitute an impermissible use of the Declaratory Judgment Act ("DJA").

- Plaintiffs fail to state a plausible claim for injunctive relief as to the Debtors under the standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

4.     Further, the Trust Advisory Committees (the "TACs") and Futures Representative

do not have the capacity or authority to bring suit on behalf of themselves or any other entity.  As

a consequence, they lack standing to maintain the instant action as plaintiffs and, therefore,

should be dismissed pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule

of Civil Procedure 12(b)(1).

5.     Finally, should the Court decline to dismiss Plaintiffs' adversary proceedings, the

Debtors should be dropped from the instant cases as misjoined parties pursuant to Rule 7021.

SPHC and Garlock Sealing Technologies, Inc. ("Garlock") are the only defendants with pending

motions seeking authorization to serve discovery requests.  Yet Garlock, as Plaintiffs themselves

point out, does not seek the same discovery that SPHC seeks.  As a consequence, SPHC does not

share in any common question of law or fact with any of the other named defendants—all of

whom have either already served the discovery requests that the Plaintiffs seek to challenge or

seek different information.  SPHC's joinder in these actions is inappropriate.

## FACTUAL BACKGROUND

6.      On October 27, 2010, Plaintiffs, four asbestos trusts (the "Trusts"), the TACs for those Trusts, and the representative of future claimants for one of the Trusts ("Futures Representative"), brought these adversary proceedings against SPHC and several other entities, including another corporation currently engaged in reorganization, several insurance companies, and (allegedly only as nominal defendants) two claims processing facilities, simultaneously in five separate chapter 11 cases before this Court. See Adv. No. 10-53702 D.I. 1. ¶¶ 7-24.

7.      Plaintiffs' adversary proceedings allege in broad, non-specific terms that the defendants seek purportedly improper discovery. See id. ¶ 25. In leveling their allegations, Plaintiffs acknowledge, but fail to reconcile, the critically important and unique circumstances distinguishing the various defendants and their respective discovery requests. See id. ¶¶ 25, 39-43. Notwithstanding their attempt to gloss over these variations, Plaintiffs concede that the requests at issue vary significantly from case-to-case. See id. ¶ 25. In some of the pending cases, courts have granted the defendants leave to serve subpoenas on the Trusts and their claims processing facilities. See id. ¶ 40. In other cases, defendants have already served subpoenas on the claims processing facilities, which have gone unanswered. See id. ¶ 39. In still others, the courts have not yet had a chance to rule on the discovery issues Plaintiffs now seek to foreclose by collateral attack. See id. ¶¶ 42-43.

8.      SPHC moved the Court under Rule 2004 in its chapter 11 case to permit SPHC to issue subpoenas to discover information necessary to its efforts to achieve a successful reorganization. See id. ¶ 42. SPHC did this before any of the adversary proceedings were filed. The Debtors' Rule 2004 Motion seeks only: (1) information on the claim forms filed by claimants who have already brought suit against the Debtors; and (2) details regarding the status

of that subset of claims.  See Adv. No. 10-53702 D.I. 1 ¶ 42; see also Case No: 10-11780 D.I. 437 (Appendix C).

9.      Plaintiffs admit that the Rule 2004 Motion that the Debtors filed in their chapter 11 cases precipitated the filing of Plaintiffs' complaints.  See Adv. No. 10-53702 D.I. 1 ¶¶ 37, 39, 42.  But Plaintiffs fail to point out that they could file—and in fact have lodged—objections to the requested discovery in the Debtors' chapter 11 cases.  See Case No: 10-11780 D.I. 513 ("Trusts' Response") (Appendix F); Joinder of the ACandS Asbestos Settlement Trust in Objections to the Debtors' Motion, Case No: 10-11780 D.I. 516 (Appendix G); Joinder of the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust in Objections to Debtors' Motion, Case No: 10-11780 D.I. 512 (Appendix E).[3]

## ARGUMENT

### I.      Plaintiffs' Attempt to Circumvent Pending Proceedings by Way of these Collateral Adversary Proceedings Violates the First-Filed Rule

10.      Plaintiffs seeks to invoke equity jurisdiction as a procedural sword to flip the proper roles of the parties under Rule 2004 and force SPHC to litigate a global and protracted lawsuit for the mere right to take routine and core discovery in their chapter 11 case.  As to SPHC, Plaintiffs seek entirely duplicative relief that they are simultaneously pursuing through

---

[3]      The Court should take judicial notice of these documents for the purposes of evaluating this motion to dismiss pursuant to Federal Rule of Evidence 201 as incorporated by Federal Rule of Bankruptcy Procedure 9017.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988) ("Indeed, the district court was entitled to take judicial notice of [the record of prior bankruptcy proceedings] in rendering its decision, regardless of the [Rule 12] motion employed."); Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir. 1983) ("[A] court may take judicial notice [of] its own court documents and records.  Furthermore, federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." (citation omitted)); In re Cortellessa, No. 05-24258, 2006 WL 1997407, at *1 n.1 (Bankr. E.D. Pa. June 9, 2006) ("[A]ll documents on the dockets of both the main case and [the] adversary proceeding are available to [the Court] by taking [the Court's] judicial notice of the documents on the docket of a case pending before [it]."); United States v. Falcone, No. 09-2269, 2010 WL 1372435, at *1 n.1 (D.N.J. Mar. 16, 2010) ("[T]he court may take judicial notice of Falcone's bankruptcy schedules, the record of proceedings in the bankruptcy case, and any adversary proceedings brought in relation to the bankruptcy case.").

the proper objection mechanisms available in the Debtors' chapter 11 cases. Plaintiffs admit that the Debtors' Rule 2004 Motion was filed before and precipitated the instant adversary proceedings, Adv. No. 10-53702 D.I. 1. ¶¶ 37-38, 42, and their complaints do not allege that they were somehow unable to fully prosecute their objections in that separate case. Plaintiffs effectively admit the procedural impropriety of these adversary proceedings as they relate to SPHC. As a result, the Court should exercise its discretion to dismiss the instant actions based on the first-filed rule.

11.     The Third Circuit adheres vigorously to "what has become known as the 'first-filed rule.'" <u>EEOC v. Univ. of Pa.</u>, 850 F.2d 969, 971 (3d Cir. 1988). "Under the first-filed rule, in cases of federal concurrent jurisdiction and absent exceptional circumstances, the court which first has possession of the subject must decide it." <u>Butera, Beausang, Cohen & Brennan, P.C. v. Ryan</u>, No. 00-2509, 2000 WL 1824171, at *2 (E.D. Pa. Dec. 11, 2000).

12.     "In deciding whether to apply the [first-filed] rule, courts look to three threshold factors: the chronology of the two actions, the similarity of the parties, and the similarity of the issues." <u>Id.</u> (citing <u>Colorado River Water Conservation Dist. v. U.S.</u>, 424 U.S. 800, 817 (1976)). The only other requirement to trigger the first-filed rule in the Third Circuit is "that the issues have such an identity that a determination in one action leaves little or nothing to be determined in the other." <u>Grider v. Keystone Health Plan Cent., Inc.</u>, 500 F.3d 322, 334 (3d Cir. 2007) (internal quotation marks omitted). Courts use the first-filed rule to insure that the "party who first brings a controversy into a court of competent jurisdiction for adjudication … [is] free from the vexation of subsequent litigation over the same subject matter." <u>Crosley Corp. v. Hazeltine Corp.</u>, 122 F.2d 925, 930 (3d Cir. 1941). In short, the rule is based on sound judicial

administration, comity, and equity, and, in this circuit, application of the rule is the norm, not the exception.  EEOC, 850 F.2d at 971.

13.     As to SPHC, Plaintiffs' adversary proceedings represent precisely the sort of wasteful, inequitable, and unnecessary secondary proceeding that the first-filed rule prohibits. There can be no doubt that Plaintiffs' primary goal in pursuing declaratory and injunctive relief in the instant case is to obstruct discovery the Debtors are seeking in their properly filed and pending Rule 2004 Motion.  See Trusts' Response, Case No: 10-11780 D.I. 513 (Appendix F), at 2 ¶ 2; see also Objection of Non-Party, Verus Claims Services, LLC, Case No: 10-11780 D.I. 496 (Appendix H), at 9-10 ¶¶ 21-22 (explaining that the adversary proceedings are designed to indirectly enjoin production from the claims processing facilities in an effort to avoid production as a result of the Debtors' pending Rule 2004 Motion) (joined in by several of the Trusts).  And all three key characteristics militating in favor of dismissal under the first-filed rule are satisfied in this case: (1) the Debtors' Rule 2004 Motion predates and, by the Trusts' own admission, precipitated the adversary proceedings; (2) the Debtors' Rule 2004 Motion involves all the necessary parties, including the Trusts that initiated these adversary proceedings; and (3) the Debtors' Rule 2004 Motion would resolve all the issues related specifically to SPHC's discovery requests that Plaintiffs raise in the adversary proceedings.  The Court should dismiss the adversary proceedings in their entirety as to SPHC based on the first-filed rule.

## II.     Plaintiffs' Adversary Proceedings Improperly Invoke the Declaratory Judgment Act

14.     Plaintiffs ask this Court to exercise its discretionary jurisdiction conferred by the DJA to advance their procedural gamesmanship and efforts to circumvent the proper discovery mechanisms available to them in the Debtors' chapter 11 cases.  The Third Circuit has emphasized that courts should exercise their authority to decline jurisdiction over DJA claims in

precisely these circumstances, and, as a result, Plaintiffs' claim for declaratory relief should be dismissed.

15. The DJA confers discretion upon courts to hear cases, but it does not create an absolute right of action for litigants. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) (DJA affords a district court "unique and substantial discretion in deciding whether to declare the rights of litigants"). Thus, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Id. at 288. Indeed, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id.; see also Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942) (courts are under "no compulsion to exercise [the] jurisdiction" afforded by the DJA).

16. When weighing considerations of practicality and wise judicial administration in declaratory judgment actions, courts have been particularly concerned with situations where, as here, litigants invoke the DJA as a weapon for procedural fencing or as a means to facilitate a race to establish favorable precedent. Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1225 (3d Cir. 1989) ("In conducting this inquiry, [c]ourts look with disapproval upon any attempt to circumvent the laudable purposes of the Act, and seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." (internal quotation marks omitted)). Additionally, the Third Circuit has emphasized the need to avoid duplicative litigation in the context of declaratory judgment actions. State Auto Ins. Co. v. Summy, 234 F.3d 131, 134 (3d Cir. 2000). A district court faced with a declaratory judgment action must, at bottom, "evaluate the conduct of the parties … to

ensure that procedural fencing, forum shopping or gamesmanship [are] not rewarded." NYLife Distribs., Inc. v. Adherence Grp., Inc., 72 F.3d 371, 383 (3d Cir. 1995).

17.      Granting Plaintiffs their requested declaratory relief would reward precisely these types of illicit motives. Rather than await and abide by the resolution of the Debtors' pending Rule 2004 Motion, Plaintiffs ask this Court to take the extraordinary step of resolving the entire scope of discovery in five separate cases by declaratory judgment, notwithstanding the fact that the same issues as to SPHC's discovery requests are pending before this Court for decision in the proper forum on the Debtors' Rule 2004 Motion. See Trusts' Response, Case No: 10-11780 D.I. 513 (Appendix F), at 2 ¶ 2. As one judge observed in response to a similar declaratory judgment action, "[i]f this declaratory judgment action must be heard in this case, I can perceive of no ordinary common-law breach of contract action ... that could not be trumped by a defendant ... filing a declaratory judgment action in Federal court for a declaration of no breach of contract. It is inconceivable to me that Congress intended to allow an action such as the present action when it enacted the Declaratory Judgment Act." New Delview Place Assocs. v. Del. Sav. Bank, No. 92-4209, 1992 WL 346281, at *5 (E.D. Pa. Nov. 10, 1992). For the same reason, the Court should exercise its broad discretion to decline DJA jurisdiction and dismiss Plaintiffs' claim for declaratory judgment.

## III.    The TACs and Futures Representative Lack Standing to Participate in These Adversary Proceedings

18.      The TACs and Futures Representative are not proper parties to the instant suits. Created by the governing trust agreements (the "Trust Agreements") of the relevant Trusts, the TACs are committees established to represent the holders of present claims against the Trusts in certain limited respects. Likewise, the Futures Representative is appointed pursuant to the relevant Trust Agreement to represent holders of future claims against the Trusts in certain

limited respects. The TACs and Futures Representative do not have either the capacity or the authority to file suit in this case because neither the Trust Agreements nor Delaware statutory law authorize the TACs or the Futures Representative to prosecute a lawsuit.

19.     Pursuant to Federal Rule of Civil Procedure 9(a)(2) (made applicable here by Federal Rule of Bankruptcy Procedure 7009), the TACs do not have capacity to sue. Federal Rule of Civil Procedure 17(b) (made applicable here to these proceedings by Federal Rule of Bankruptcy Procedure 7017) generally provides that whether a party, other than a corporation or an individual who is not acting in a representative capacity, has the capacity to assert an action under state law is determined under the law of the forum state. In this case, there is no Delaware statute that enables the TACs or the Futures Representative to file suit.

20.     The only statute arguably relevant as to the TACs is the Delaware common name statute, which provides that "[a]n unincorporated association of persons, including a partnership, using a common name may sue and be sued in such common name . . . ." 10 Del. C. § 3904. The TACs, however, are not unincorporated associations within the meaning of the statute because, based on the Trust Agreements, they do not appear to be a bona fide association with an actual existence sufficient to support capacity, with, for example, a mailing address, telephone number or website or office or place of business. Courts in other jurisdictions have held, under federal law, that similar types of committees are not unincorporated associations. See Assoc. for the Pres. of Freedom of Choice, Inc. v. Wadmond, 215 F. Supp. 648, 650 (S.D.N.Y. 1963) (holding that Committee on Character and Fitness of the Appellate Division of the Supreme Court of the State of New York is not an unincorporated association); Kivalina Relocation Planning Comm. v. Teck Cominco Alaska, Inc., 227 F.R.D. 523, 526 (D. Alaska 2004) (holding that intergovernmental committee not an unincorporated association for purposes of Federal Rule

of Civil Procedure 17(b)); In re RCN Litig., Case No. 04-5068, 2006 WL 753149, at *5 (D.N.J. Mar. 21, 2006) (holding that compensation committee of board of directors does not have capacity to sue).

21.     Even if the TACs or the Futures Representative had capacity to sue, they are not authorized to sue in this case.  The Trusts are Delaware statutory trusts under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et. seq. (the "Delaware Statutory Trust Act"). The TACs' and Futures Representative's rights and powers are therefore governed by the Trust Agreements and by the Delaware Statutory Trust Act.[4]  Neither, however, provides the TACs or the Futures Representative with authority to file suit.  The Trust Agreements, as attached to the plans of reorganization for their respective debtors, instill the TACs and the Futures Representative with certain rights, but the right to initiate and prosecute a suit is not among them. In fact, the Trust Agreements expressly authorize the Trustee to sue and be sued, but no corresponding right is granted to the TACs or the Futures Representative.  Similarly, the Delaware Statutory Trust Act expressly authorizes the Trusts to sue and be sued (Delaware Statutory Trust Act at § 3804(a)), but does not authorize the TACs or the Futures Representative to bring suit.

22.     The presence of the TACs and the Futures Representative, represented by separate counsel from the Trusts themselves, also belies the Trusts' complaint about the expenses they will allegedly incur in responding to discovery.  It is difficult to accept the Trusts' professed concern that their funds be used only to pay asbestos claims, when the plaintiffs include four

---

[4]     The Delaware Statutory Trust Act provides that the governing agreement of a Delaware statutory trust "may contain any provision relating to the management of the business and affairs of the statutory trust, and the rights duties and obligations of the trustees, beneficial owners and other persons, which is not contrary to any provision or requirement of this subchapter . . . ."  Delaware Statutory Trust Act at § 3806(b).  The statute further provides that the governing agreement "[m]ay provide rights to any person, including a person who is not a party to the governing instrument, to the extent set forth therein."  Delaware Statutory Trust Act at § 3806(b)(8).

TACs and Futures Representatives whose legal bills are all presumably being funded by the Trusts and yet who are not alleged to have any interests in these proceedings that differ from those being pressed by the Trusts themselves.

23.     Accordingly, the TACs and the Futures Representative are without capacity or authority to sue and should be dismissed from the case under Rule 12(b)(1).

## IV.   Plaintiffs' Request for Injunctive Relief Fails to State a Claim Upon Which Relief May be Granted

24.     Plaintiffs also fail to articulate a plausible factual basis for the injunctive relief they now seek.  A party seeking injunctive relief has an affirmative burden to show (1) irreparable injury by the denial of relief and (2) the lack of an alternative adequate remedy. Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992); accord Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001); see also eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (holding that irreparable harm and lack of alternative remedies must be shown for a court to grant a permanent injunction).  Plaintiffs have not pled sufficient facts as to either.  Instead, they rely upon generalizations assembled from bits and pieces of the various defendants' cases along with the bald-faced assertion of legal conclusions in an attempt to surmount the pleading requirements.  "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible" based on actual allegations of fact rather than speculative generalizations and unsupported legal conclusions, the injunctive relief count of Plaintiffs' complaints should be dismissed.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

### A.      The Pleading Standard Governing Requests for Injunctive Relief

25.     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 570). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Id.</u> at 1950. Moreover, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (citation omitted). As the Court explained in <u>Iqbal</u>, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949. Stated another way, the complaint must "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

26.     Drawing upon this guidance, the Third Circuit requires courts assessing a motion to dismiss to undertake a two-part analysis. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). First, a court must separate the factual allegations of the complaint from assertions of legal conclusions. <u>Id.</u> at 210-11. Second, a court must then decide whether the statements that can be properly classified as factual allegations state a plausible claim for relief. <u>Id.</u> at 211. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." <u>Id.</u>

### B.     Plaintiffs Fail to Assert Facts "Showing" They Plausibly Face Irreparable Harm from the Debtors' Proposed Discovery Requests

27.     Plaintiffs concede on the face of their complaints that the Debtors' discovery requests—unlike those of any of the defendants other than Garlock—have yet to issue and instead remain pending before this Court on the Debtors' Rule 2004 Motion. <u>See</u> Adv. No. 10-53702 D.I. 1. ¶ 42. This fact alone is fatal to any attempt to plausibly allege that Plaintiffs face immediate or irreparable injury at the hands of the Debtors.

28.     The irreparable injury necessary to justify any grant of preliminary injunctive relief must be tangible; speculation about the possibility of future harm will not suffice. <u>Adams</u>

v. Freedom Forge Corp., 204 F.3d 475, 488 (3d Cir. 2000). Indeed, "[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." Holiday Inns of Am., Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969); see also McLendon v. Cont'l Can Co., 908 F.2d 1171, 1182 (3d Cir. 1990) ("[A] permanent injunction will issue only where a threat of harm exists, not just where potential harm exists." (citing Holiday Inns of Am., Inc., 409 F.2d at 618)); Ne. Jet Ctr., Ltd. v. LeHigh-Northampton Airport Auth., No. 90-1262, 1996 WL 442784, at *7 (E.D. Pa. Aug. 1,1996) (describing the requisite showing of irreparable harm for permanent injunctive relief as "clear showing of immediate irreparable injury" and "a presently existing actual threat" (internal quotation marks omitted)).

29.     Here, Plaintiffs fail to allege any meaningful facts supporting their claim of irreparable harm. Plaintiffs assert they may face conflicting decisions in discovery matters, but do not provide any facts suggesting they are currently confronting such a problem as to SPHC. Plaintiffs offer no factual details explaining how a denial of discovery in SPHC's case would have any bearing upon or require contradictory compliance in another. And, there is no risk of any ambiguity or conflict between orders to which the Trusts may be subject as to SPHC, because any order permitting the Debtors' requested discovery in their chapter 11 cases will issue from this Court, which also issued the orders confirming the plans of reorganization that established the Trusts.

30.     Plaintiffs further allege without specificity that the proposed discovery they face in the array of actions in which they are currently involved could prove expensive. But this last attempt by Plaintiffs to allege irreparable harm completely neglects the well established rule that

litigation costs cannot provide a foundation for a finding irreparable harm. <u>Bethlehem Steel Corp. v. EPA</u>, 669 F.2d 903, 911 (3d Cir. 1982) ("The only cost sustained by the company in that event would be for litigation expenses, and it is well-settled that they do not constitute irreparable injury.").

31.     Similarly, Plaintiffs fail to allege any facts showing the Debtors' discovery requests plausibly represent an imminent or immediate threat. Though the complaints acknowledge that the numerous discovery requests at issue are at varying procedural stages and seek very different information, <u>see</u> Adv. No. 10-53702 D.I. 1 ¶¶ 39-43, Plaintiffs attempt to aggregate all of the defendants into a single cohesive whole. But there is no basis for this Court to lump the Debtors together with other defendants and adjudicate irreparable harm on a global and abstract basis. <u>Cf.</u> <u>Freedom Forge Corp.</u>, 204 F.3d at 488 (noting in preliminary injunction context that "proof by association in a lawsuit, or proof by 'common sense'" are insufficient). Consequently, none of Plaintiffs' assertions about the discovery requests they currently face have any bearing on SPHC. Indeed, the Debtors have not yet obtained leave of court to issue subpoenas on Plaintiffs. Unless and until this Court grants the Debtors' Rule 2004 Motion, any purported injury to Plaintiffs is by definition contingent on a future event. More importantly, because Plaintiffs have appeared and opposed the Rule 2004 Motion, no harm would ever occur because Plaintiffs' objections will either be sustained, in which event the discovery will not proceed, or they will be overruled in which event Plaintiffs will have been provided a full and fair opportunity to raise and argue all the issues they have raised in their complaints.

32.     Plaintiffs have failed to plead sufficient facts to form a plausible basis to find they face immediate irreparable harm. That failure stems from the very simple fact that no such basis exists. At this juncture, Plaintiffs have offered all that they have: an array of legal conclusions

and unrelated facts gathered from a number of pending matters that have no meaningful bearing on one another. The Court should dismiss the injunctive relief count.

### C. Plaintiffs Fail to Plead Facts Demonstrating They Lack An Alternative Adequate Remedy Through Their Opposition to the Rule 2004 Motion

33.     Plaintiffs similarly fail to allege any facts plausibly showing that an injunction represents their only available adequate remedy. Plaintiffs offer no factual support explaining why a full-blown collateral lawsuit is the only way to prevent purportedly improper discovery. On the contrary, Plaintiffs' efforts to object in the Debtors' chapter 11 cases illustrate the redundancy of their request for equitable relief in the instant action.

34.     Plaintiffs make no effort in their complaints to satisfy the adequate alternative remedy requirement. On the contrary, Plaintiffs admit that they have objected as provided by the Federal Rules of Bankruptcy Procedure in earlier proceedings involving some of the other defendants, and, setting that fully sufficient remedy aside, suggest they should be entitled to additional relief because they disagreed with the courts' decisions in those cases. See Adv. No. 10-53702 D.I. 7 ¶ 10. Though Plaintiffs mention the Debtors' pending discovery motion at some length, they neglect to point out that they maintain the same right to object to the Debtors' request—and, indeed, the Trusts have all done so. Plaintiffs' extensive efforts to object to the proposed discovery in Debtors' chapter 11 cases decisively demonstrate that Plaintiffs have an adequate alternative remedy available to them with regard to the Debtors. See Inmates of Attica Corr. Facility v. Rockefeller, 453 F.2d 12, 21 (2d Cir. 1971) (refusing to grant global injunction protecting prisoners from interrogations that were allegedly being conducted without the presence of counsel where prisoners had an alternative and adequate remedy, namely, the filing of a motion to suppress in the proceeding in which the State sought to use any information obtained); see also Trusts' Response, Case No: 10-11780 D.I. 513 (Appendix F). Much like a

complaint's presentation of an "obvious alternative explanation" discussed in Twombly, 550 U.S. at 567, this counter-productive pleading on the part of Plaintiffs regarding their ability to object effectively forecloses their ability to plausibly show an entitlement to relief based upon the factual allegations in their complaints.

35.     The Court should dismiss the injunctive relief count on these grounds as well.

**V.    In the Alternative, SPHC Should be Dismissed From this Action as a Misjoined Party under Federal Rule of Civil Procedure 21.**

36.     Plaintiffs' adversary proceedings, even if they are otherwise properly before the Court, have misjoined SPHC with several disparate defendants.  The facts applicable to SPHC differ from those of all the other defendants, and, as a result, SPHC does not share in any common questions of law or fact.  The Court should dismiss SPHC from these proceedings, allowing it and the Trusts to fully vet the issues raised here in the properly focused context of the pending Rule 2004 Motion in the Debtors' bankruptcy cases.

37.     Federal Rule of Civil Procedure 21, which applies here through Federal Rule of Bankruptcy Procedure 7021, provides that "misjoinder ... occurs when there is no common question of law or fact or when ... the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction."  DirecTV, Inc. v. Leto, 467 F.3d 842, 844 (3d Cir. 2006).  SPHC qualifies for dismissal under this standard.  With respect to each of the defendants, Plaintiffs necessarily focus on separate discovery requests sought in separate proceedings involving different facts and circumstance.  Further, with respect to most of the defendants, the question presented to the Court is whether other courts properly authorized those defendants to proceed with discovery in their own independent proceedings.  And Garlock, the one defendant in a similar procedural posture (albeit before a different court), is seeking different discovery in a reorganization context that is necessarily different from that of SPHC.

-- 16 --

38.     Plaintiffs have failed to identify any common questions of law or fact unifying these disparate defendants or justifying a universal disposition of any fact-specific concerns they present.  In short, any result reached by this Court would, by necessity, be based on facts and circumstances <u>not</u> common to all of the defendants—most especially SPHC in light of its differences from all the other defendants.  Indeed, In order to adjudicate the relief sought by the Trusts as to each defendant, this Court will have to consider a host of distinct issues, including:

- The content and scope of the discovery sought by each defendant;

- The defendant's need or asserted justification for the discovery in the context of its particular case;

- The procedural posture of the defendant's discovery requests;

- Any rulings that other courts have issued regarding the discovery sought by the defendants;

- Whether the defendant is willing to enter into a confidentiality agreement with the Trusts;

- Whether the defendant has indicated a willingness to address  the purported burdens of discovery on the Trusts by covering the costs of their production or taking other action;

- The issues or controversies to which the discovery relates;

- Whether other discovery has been authorized in the case and the nature of that discovery; and

- The basis for the Plaintiffs' objections to the discovery.

39.     The Court has two options to correct misjoinder: (1) the misjoined party may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and required to proceed separately.  <u>DirecTV</u>, 467 F.3d at 845.  "The effect of each option is quite different.  When a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice."  <u>Id.</u> (citations omitted).  Conversely, "when a court 'severs' a claim

against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise." Id.

40.     The former option—dropping SPHC from these adversary proceedings—would best serve the needs of judicial economy and will better facilitate a fair resolution of Plaintiffs' claims.  By dropping SPHC, the Court can permit SPHC and the Trusts to resolve Plaintiffs' discovery concerns through the Debtors' properly filed Rule 2004 Motion in the their chapter 11 cases.  In contrast, requiring SPHC to defend in a new adversary proceeding claims brought by the Trusts that are merely the arguments presented by the Trusts' objections to the Rule 2004 Motion would subject the Debtors to duplicative, wasteful litigation of the same issues in two separate proceedings.

## CONCLUSION

41.     Plaintiffs' adversary proceedings are procedurally improper as to SPHC, are devoid of merit, and are a misguided attempt to undermine Rule 2004 discovery that the Debtors need for purposes of their chapter 11 cases.  These actions run afoul of the first-filed rule, reflect an attempt to abuse the avenues of relief created by the DJA, and fail to state a claim for injunctive relief in any form.  SPHC respectfully requests that the Court dismiss with prejudice Plaintiffs' complaint in each of the five above-captioned adversary proceedings as to Specialty Products Holding Corp., which should be dismissed as a defendant in each of these adversary proceedings.

In the alternative, SPHC respectfully requests that it be dropped as a defendant from each of the five above-captioned adversary proceedings as a misjoined party pursuant to Federal Rule of Bankruptcy Procedure 7021 and Federal Rule of Civil Procedure 21.

Dated:  November 18, 2010

Respectfully submitted,

*/s/ Tyler Semmelman*
Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
Zachary I. Shapiro (DE 5103)
Tyler D. Semmelman (DE 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Robert J. Jud (TX 24041217)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

ATTORNEYS FOR DEFENDANT
SPECIALTY PRODUCTS HOLDING CORP.